IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA-ELENA PANDO, Individually<br>and as Representative of the Estate of Joel<br>G. Pando, Deceased,<br>   Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA,<br>   Defendant. | § § § § § § § § § § § | EP-06-CV-423-PRM |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On this day, the Court considered Defendant The Prudential Insurance Company of America's ("Defendant") "Motion for Summary Judgment," filed on September 6, 2007; Plaintiff Maria-Elena Pando's ("Plaintiff") "Response to Defendant's Motion for Summary Judgment," filed on September 26, 2007; and Defendant's "Reply in Support of Motion for Summary Judgment," filed on October 1, 2007, in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion should be granted for the reasons set forth below.

I.  FACTUAL AND PROCEDURAL BACKGROUND

   A.   Factual Background

Plaintiff is the beneficiary of an accidental death insurance plan purchased by her deceased husband, Joel Pando ("Mr. Pando"), and issued by Defendant. This case arises from Plaintiff's claim for benefits following Mr. Pando's death and involves the terms of the underlying insurance plan. Neither party disputes the facts that give rise to the instant case.

As an employee of Johnson & Johnson, Mr. Pando participated in a group insurance policy ("the Policy"). The Policy is governed by the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended. The Policy includes the Johnson & Johnson Accidental Death and Dismemberment Insurance Plan (the "Plan"), which is issued and administered by Defendant. The Plan insures participants who sustain accidental death or dismemberment. PRU/PANDO at 00150.[1] Participants are provided with a Certificate of Coverage booklet which describes the terms of coverage. *Id.* at 00152-53.

On November 4, 2004, Mr. Pando died after the car he was driving collided with a tree. *Id.* at 00013. Following Mr. Pando's death, Plaintiff submitted an insurance claim to Defendant, asserting that she was entitled to benefits as the named beneficiary of a covered loss. *Id.* at 00001-00005. In a letter dated February 7, 2005, Defendant denied her claim. *Id.* at 00046-00049. Defendant explained that Plaintiff was ineligible for benefits because Mr. Pando's death did not "meet the policy definition of an accidental death" as the evidence showed that he was legally intoxicated at the time of his death. *Id.* In Texas, a driver who has a blood alcohol concentration of 0.08% or greater is considered intoxicated. TEX. PEN. CODE §§ 49.01(2)(B) (West 2001).

On June 21, 2005, Plaintiff filed an appeal with Defendant, seeking a reconsideration of her claim. *Id.* at 00061-00063. After referring the claim to its Legal and Medical Departments, Defendant affirmed its decision to deny Plaintiff's claim. *Id.* at 00093-00096. Defendant reiterated that Mr. Pando's death did not qualify for coverage because he was "legally intoxicated while operating a motor vehicle" at the time of his death, a condition which violates the terms of coverage. *Id.* at 00095.

---

[1] According to the affidavit of Victoria A. Angle, Senior Claims Examiner for Defendant, it is part of Defendant's regular course of business to maintain an administrative record of any claims submitted to Defendant for benefit coverage. Def.'s Mot. Summ. J. Ex. 2. Defendant compiled an administrative record in connection with Plaintiff's claim. Both Plaintiff and Defendant refer to documents contained within the administrative record as "PRU/PANDO at 00XXX." Herein, the Court will refer to these documents in the same manner.

In order to exhaust her administrative remedies, Plaintiff filed a second appeal on December 6, 2006, asserting that there was "no evidence to indicate that Mr. Pando was using any alcohol while operating the motor vehicle." *Id.* at 00102-00103. On March 30, 2007, Defendant re-affirmed its decision to deny Plaintiff's claim. *Id.* at 00119-00121.

### B. Procedural Background

Plaintiff filed the present action against Defendant in the 171st Judicial District Court of El Paso County, Texas, raising claims under ERISA, Texas statutory law, and common law. Pl.'s Compl. 2-4. Defendant timely removed the case to the Court on the basis of both federal question and diversity jurisdiction. Defendant initially moved for summary judgment on Plaintiff's state law claims. On August 30, 2007, the Court granted Defendant's Motion, holding that Plaintiff's state law claims were preempted by ERISA. *Pando v. Prudential Ins. Co. of Am.*, 511 F.Supp.2d 732 (W.D. Tex. 2007). Defendant now moves for summary judgment on the remaining ERISA claim.

## II. STANDARD OF REVIEW

### A. Summary Judgment

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute regarding a material fact is "genuine" if the evidence indicates that a reasonable factfinder could find in favor of the non-moving party. *Id.*

To defeat summary judgment, the non-movant must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). In other words, "the non-movant must adduce evidence which creates a material fact issue concerning each of the essential elements of its case for which it will bear the burden of proof at trial." *Abbott v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). The non-movant "is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In reviewing a motion for summary judgment, a court construes all the evidence in the light most favorable to the non-moving party and makes all inferences in its favor. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

**B.   Review of a Denial of ERISA Coverage**

*1.   Abuse of Discretion*

A federal district court may review a decision by an ERISA plan administrator to deny benefit eligibility. 29 U.S.C. § 1132(a)(1)(B). An administrator's construction of an ERISA plan is reviewed for abuse of discretion where the plan gives the administrator discretionary authority to construe its terms. *Chacko v. Sabre, Inc.*, 473 F.3d 604, 610 (5th Cir. 2006). A court "must give deference to the administrator's decision." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).

The amount of deference accorded to the administrator's decision, however, relates to the existence or non-existence of a conflict of interest. *Id.* at 297. A conflict of interest exists where the plan administrator is "self-interested," such as when it both insures and administers the plan. *Id.* at 295 (explaining that an administrator in such a position "potentially benefits from every denied

4

claim."). Where an administrator's decision is tainted by a conflict of interest, a court takes a "sliding scale" approach to evaluate whether there was an abuse of discretion. *MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003). Under the "sliding scale" approach, a court is required "to reduce the amount of deference it provides to an administrator's decision." *Id.* at 478.

In this case, the Plan expressly vests Defendant with "the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine benefits payable." PRU/PANDO at 00146. In addition, it is undisputed that Defendant is both the insurer and administrator, which dual role raises "a minimal basis for a potential conflict of interest." *Corry v. Liberty Life Ins. Co.*, 499 F.3d 389, 398 (5th Cir. 2007) (review of an administrator's decision accorded less than full deference where it both insured and administered a benefit plan). Accordingly, the Court reviews Defendant's decision for abuse of discretion "'with only a modicum less deference than [it] otherwise would.'" *Id.* (quoting *Vega*, 188 F.3d at 301).[2]

    2. *Challenge to Defendant's Construction of the Terms of the Plan*

Plaintiff submits that Defendant abused its discretion by erroneously interpreting an exclusionary provision contained within the Plan (hereinafter referred to as the "exclusionary provision").[3] There are two approaches that a court may take to make this determination. *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 629-30 (5th Cir. 2004).

    a. The *Wildbur* Analysis

---

[2] Plaintiff has submitted no evidence that Defendant's dual role adversely affected her claim.

[3] The Plan provides: "A loss is not covered if it results from . . . [w]hile operating a motor vehicle, the person's illegal use of: (1) alcohol . . ." PRU/PANDO at 00152-00153. *See discussion, infra* II. B(2)(c).

5

Under the first approach, the court undertakes a two-step process. *Wildbur v. ARCO Chemical Co.*, 974 F.2d 631 (5th Cir. 1992). First, it determines whether the administrator gave the term at issue a legally correct interpretation. *Id.* at 637. If the court finds the administrator's interpretation to be incorrect, it then evaluates whether the administrator abused its discretion by deciding to deny benefits. *Id.* Courts should use this framework "unless compelling circumstances justify a departure." *Baker*, 364 F.3d at 633 (Wiener, J., concurring).

        b.    The "Direct Contradiction" Exception to the *Wildbur* Analysis

The *Wildbur* framework, however, is not appropriate in every case. *Baker*, 364 F.3d at 629; *see also High v. E-Systems, Inc.*, 459 F.3d 573 (5th Cir. 2006) (noting that a court may find that an administrator abused its discretion without first addressing whether its determination was legally correct). In certain situations, a court "can short-circuit the *Wildbur* process and refuse to give any effect to the plan administrator's interpretation." *Baker*, 364 F.3d at 633 (Wiener, J., concurring). This analysis is appropriate where the court finds that the administrator's interpretation "directly contradicts the plain meaning of the plan language. . . ." *Gosselink v. AT&T, Inc.*, 272 F.3d 722, 727 (5th Cir. 2001). In these circumstances, an administrator abuses his discretion "even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations." *Id.* at 727. Courts should use this alternative approach only "sparingly and with restraint." *Baker*, 364 F.3d at 634 (Wiener, J., concurring).

        c.    The Relevant Plan Language

The Plan provides that "[a] loss is not covered if it results from . . . [w]hile operating a motor vehicle, the person's *illegal use* of: (1) alcohol . . . ." PRU/PANDO at 00152-000153 (emphasis added). The Plan does not define the terms "use" or "illegal use."

The meaning of the term "use" in this context is ambiguous such that Defendant's interpretation does not directly contradict the plain meaning of the Plan. When the language of a plan has been found to be ambiguous, a court has concluded that the *Wildbur* analysis is appropriate. *Crowell v. Shell Oil Co.*, 481 F.Supp.2d 797, 810 n.10 (S.D. Tex. 2007). Accordingly, the Court will apply the *Wildbur* two-step analysis to determine whether Defendant abused its discretion in denying Plaintiff's claim.

        3.    *Plaintiff's Challenge to Defendant's Factual Determination*

Plaintiff argues that Defendant abused its discretion by deciding to deny Plaintiff's claim absent a factual basis. Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 17. Specifically, Plaintiff argues that "[t]he evidence does not support . . . a conclusion [that] Mr. Pando (1) illegally used alcohol; (2) while he was operating a motor vehicle." *Id.*

"[F]actual determinations made by administrators are reviewed for abuse of discretion." *Chacko*, 473 F.3d at 610. An administrator does not abuse its discretion if its decision to deny benefits is supported by substantial evidence. *Ellis v. Liberty Life Assurance of Boston*, 394 F.3d 262, 273 (5th Cir. 2004); *see also Vega*, 188 F.3d at 299 ("[T]he administrator's decision [must] be based on evidence, even if disputable, that clearly support the basis for denial."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as sufficient to support a conclusion." *Ellis*, 394 F.3d at 273. When assessing factual questions, the court is limited to reviewing only the evidence before the administrator. *Vega*, 188 F.3d at 299. In this case, neither party asks the Court to consider evidence outside the administrative record.

### III. ANALYSIS

    **A.    Defendant's Interpretation Is Legally Correct**

To determine whether a defendant's interpretation is legally correct, a court should consider (1) whether the defendant has given the plan a uniform construction, (2) whether a different interpretation will result in any unanticipated costs to the insurer, and (3) whether the defendant's interpretation is "consistent with a fair reading of the plan." *Ellis*, 394 F.3d at 270 (quoting *Wildbur*, 974 F.2d at 638).

### 1. Neither Party Presents Evidence Regarding the First Two Factors

There is no evidence in the record regarding whether Defendant has previously construed the exclusionary provision. Because neither party has submitted evidence of benefit determinations other than the one under scrutiny, the Court is unable to compare Defendant's evaluation of Plaintiff's claim with its evaluation of other similar claims.

In addition, there is no evidence in the record to allow the Court to address whether any unanticipated costs would result under different interpretations of the Plan. While Plaintiff alleges that "the only potential unanticipated cost in a different interpretation of the policy is paying this claim," Pl.'s Resp. to Def.'s Mot. Summ. J. ¶ 7, this assertion, standing alone, is not evidence to support her allegation. Defendant does not address the issue. Accordingly, the crux of this case depends on the third factor — whether Defendant's interpretation is consistent with a fair reading of the Plan.

### 2. Defendant's Interpretation is Consistent with a Fair Reading of the Plan

The dispute centers on the meaning of the phrase "while operating a motor vehicle, the person's illegal use of . . . alcohol." Defendant contends that by driving while intoxicated Mr. Pando illegally "used" alcohol. Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 2. To the contrary, Plaintiff argues that the exclusionary provision applies only where the insured's actual

consumption of alcohol is illegal. Pl.'s Resp. to Def.'s Mot. Summ. J. ¶¶ 14-19. Thus, Plaintiff avers, Mr. Pando's use of alcohol, that is, his actual consumption, was legal (he was of age to legally consume alcohol and there is no evidence that he consumed alcohol while driving[4]), and therefore, not subject to the "illegal use" exclusion.[5] *Id.* Plaintiff further contends that driving after drinking alcohol is not a per se illegal use of alcohol. *Id.* ¶¶ 15, 17.

To evaluate whether an interpretation is consistent with a fair reading of an insurance plan, a court examines the relevant plan language. *Gosselink*, 272 F.3d at 727. If the terms of an insurance policy are ambiguous, and the administrator has discretion to interpret the meaning of the terms, a court "need only assure that the administrator's decision falls somewhere on the continuum of reasonableness — even if on the low end."[6] *Vega*, 188 F.3d at 297. The Court has already determined that the exclusionary provision is ambiguous,[7] and neither side disputes that Defendant has discretion to interpret the terms of the Plan. Thus, Defendant will prevail if the Court finds it

---

[4] "A person commits an offense if the person knowingly possesses an open container in a passenger area of a motor vehicle that is located on a public highway, regardless of whether the vehicle is being operated or is stopped or parked." TEX. PEN. CODE § 49.031(b) (West 2001).

[5] Plaintiff's suggested reading of the exclusionary provision might be more persuasive if the term "illegal use . . . of alcohol" had not been included within the context of "while operating a motor vehicle."

[6] Plaintiff submits that the Court is bound to apply the rule of *contra preferentem*, citing *Todd v. AIG Life Ins. Co.*, 47 F.3d 1148 (5th Cir. 1995). Plaintiff's reliance is misplaced. The rule of *contra preferentem*, which requires the court to strictly construe ambiguous insurance terms in favor of the insured, does not apply if the insurer has discretion to interpret the plan. *High v. E-Systems, Inc.*, 459 F.3d 573 (5th Cir. 2006). As articulated above, the standard of review for the Court in the instant case is abuse of discretion given that the Plan vests Defendant with discretion to construe its language.

[7] *See discussion, supra* II. B(2)(c).

reasonable to interpret the exclusionary provision to apply to an insured who drives while under the influence of alcohol.

Neither party has provided the Court with controlling legal authority that construes the challenged exclusionary provision or similar language. While the Fifth Circuit Court of Appeals has yet to address a provision similar to the one at issue, at least one federal district court within the Fifth Circuit considered such a provision in a medical benefits coverage dispute, and affirmed an interpretation of "illegal alcohol use" in reference to one who drives while intoxicated. In *Jones v. Channel Shipyard & Co.*, No. CIV.A 00-3703, 2001 WL 1490915, at *1 (E.D. La. Nov. 20, 2001), the court construed a provision which excluded the following:

> (2) Alcohol. Services, supplies, care or treatment to a Covered Person for an Injury or Sickness which occurred as a result of that Covered Person's *illegal use of alcohol.*" Expenses will be covered for injured Covered Persons other than the person *illegally using alcohol.*

*Id.* at *2 (emphasis added). In *Jones*, the insured was injured in an automobile collision. *Id.* A blood test performed at a hospital shortly after the accident indicated that his blood alcohol concentration was 0.05%. *Id.* at *1. There was evidence that the insured had consumed alcohol at a private residence prior to driving, although not while driving.[8] *Id.* The defendant denied medical benefit coverage, relying on two provisions, one relating to "illegal acts" and the other to "illegal use of alcohol," based on its conclusion that the insured drove while intoxicated. *Id.* at *2. The court affirmed the administrator's decision with respect to the "illegal acts" provision because the insured was a minor, making it illegal for him to drive with a blood alcohol concentration exceeding the 0.02% legal limit for drivers under 21. *Id.* at *4. As to whether the insured *used* alcohol while

---

[8] As the court noted, "[u]nder Louisiana law, it is not illegal for minors to drink in private residences." *Jones*, 2001 WL 1490915, at *3. It also noted that the legal blood alcohol concentration for drivers under 21 is 0.02%. *Id.*

driving, the court concluded that it was "rational for [the defendant] to conclude that [the insured] illegally used alcohol — not because the drinking in and of itself was illegal but, because, combined with driving, it was." *Id.* at *3.[9]

Additionally, at least one other federal district court has addressed the applicability of an exclusionary provision similar to the one before the Court. In *Kitchen v. Kociusko Community Hospital Employee Benefit Plan*, No. 3:98-CV-0613RM, 2000 WL 33173806, at *1 (N.D. Ind. April 14, 2000), the reviewing court considered whether a provision that excluded benefits for injuries that "occurred as a result of a Covered Person's negligent or *illegal use of alcohol*" applied to an insured who was involved in a car crash where the evidence showed that her blood alcohol content exceeded the legal limit. *Kitchen*, 2000 WL 33173806, at *1 (emphasis added). The court also addressed a second provision, which barred coverage for injuries "arising from driving under the influence of alcohol, over the legal limit, and when injuries are a result of a felony or misdemeanor." *Id.* at *1. The court analyzed both provisions independently to determine whether the defendant abused its discretion. As to the first provision, the court, accepting the parties' contention that the phrase "illegal use of alcohol" was ambiguous, found it reasonable to interpret the phrase as barring benefits for injuries sustained by an insured while driving under the influence of alcohol. *Id.* at *3.[10]

---

[9] In *Jones*, the court did not apply the *Wildbur* framework to determine whether the proffered interpretation was legally correct. *Jones*, 2001 WL 1490915, at *3 n.3. Applying the alternative approach, the court analyzed whether the defendant abused its discretion. However, its holding is persuasive authority to support the reasonableness of Defendant's interpretation.

[10] As to the second provision, the court held that it was "not unreasonable for the defendants to interpret [the second provision] to exclude coverage for injuries that flow from conduct prohibited by law . . . ." *Id.* at *3.

11

By its express terms, the Plan does not preclude coverage for death resulting from driving while intoxicated or driving while under the influence of alcohol. Yet, despite the unfortunate circumstances underlying this case, the law is clear that an administrator's reasonable interpretation of an ambiguous provision is entitled to deference. *See e.g.*, *Gosselink*, 272 F.3d at 729 n.8 (noting that though "the relevant language at issue is hardly a model of clarity . . . [it] does not require the Plan to be interpreted in the manner espoused by the Plaintiffs."); *MacLachlan*, 350 F.3d at 482 ("The remedy for . . . ambiguity in a plan's language is not the compelled inclusion of all employees who arguably fit within the scope, but rather, the exercise of interpretative discretion by a duly empowered administrator."). Therefore, the Court finds the Defendant's interpretation is reasonable, and likewise consistent with a fair reading of the Plan. Accordingly, Defendant's interpretation is a legally correct interpretation and not an abuse of discretion.[11]

### B.  Defendant's Factual Determination is Supported by Sufficient Evidence

To deny coverage under Defendant's proffered interpretation of the exclusionary provision, there must have been evidence in the administrative record that (1) Mr. Pando was operating a motor vehicle and (2), while operating the motor vehicle, he illegally used alcohol. In the Court's opinion, there is substantial evidence in the administrative record to support Defendant's conclusion that Mr. Pando's death resulted from driving while intoxicated. Mr. Pando was the driver and sole occupant of the car involved in the collision. PRU/PANDO at 00014, 00017. He had a blood

---

[11]Having found Defendant's interpretation to be legally correct, "the inquiry is over, pretermitting any need to consider whether the . . . interpretation was not an abuse of discretion." *Ellis*, 394 F.3d at 270. *See also Aboul-Fetouch v. Employee Benefits Comm.*, 245 F.3d 465, 472 (5th Cir. 2001) ("If the court determines that the plan's administrator's interpretation of the plan is legally correct, then the administrator's interpretation and denial of benefits should be upheld because there cannot have been [sic] any abuse of discretion.").

alcohol concentration of 0.16%. *Id.* at 00022. This is sufficient evidence to support a finding that Mr. Pando's use of alcohol was illegal at the time of his death.

There is also medical evidence that being intoxicated significantly contributed to Mr. Pando's death. *Id.* at 00095. El Paso County Chief Medical Examiner Dr. Corinne Stern performed an autopsy and issued a report wherein she opined that Mr. Pando "had been consuming alcohol prior to his death." *Id.* at 00017, 00022. Similarly, Defendant's medical consultant, Dr. Jill Fallon, concluded that "[t]o a degree of medical certainty, the intoxication was a significant medical factor leading to the death of the insured." *Id.* at 00086.

According to the police report, Mr. Pando failed to drive in a single line, was inattentive and under the influence of alcohol. *Id.* at 00014. Mr. Pando's death certificate indicated that alcohol probably contributed to his death. *Id.* at 00030. There is no evidence in the record to suggest any other possible cause of death. Mindful of Defendant's potential conflict of interest, the Court concludes that there is substantial evidence in the record to support Defendant's decision to deny benefits.[12]

## IV. CONCLUSION

In conclusion, the Court holds that Defendant's interpretation is consistent with a fair and reasonable reading of the Plan. Moreover, Defendant's decision to deny coverage is supported by

---

[12]There is no support in the record for Plaintiff's assertion that Defendant abused its discretion by concluding that Mr. Pando's death was not accidental. Defendant did not deny coverage on the grounds that Mr. Pando purposely or knowingly caused his death. Rather, the evidence suggests Defendant concluded that Mr. Pando's death was not an accident *under the terms of the policy*. PRU/PANDO at 00120 ("[T]he insured death does not meet the policy definition of an accidental Loss.").

The Plan does not cover all accidental losses. *Id.* at 00150. Some losses, though accidental because they are unintentional, are ineligible for benefit coverage. *Id.* at 00152-00153. Therefore, Defendant's decision to deny coverage, though the loss was the result of a tragic and unfortunate accident, is not evidence of an abuse of discretion.

the evidence. Accordingly, the Court concludes that Defendant did not abuse its discretion in denying Plaintiff's claim for coverage, and determines that the following orders should be entered:

**IT IS ORDERED** that Defendant The Prudential Insurance Company of America's "Motion for Summary Judgment" (Docket No. 57) is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that any and all remaining pending motions are hereby **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this matter.

SIGNED this 20th day of **December, 2007.**

PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE

14